Opinión disidente emitida por el
Juez Presidente Señor Hernández Denton,
a la cual se une la Juez Asociada Señora Rodríguez Rodríguez.
Disentimos de lo resuelto en la Opinión mayoritaria por tres razones. Primero, al momento de computar las dos pruebas anuales de dopaje que se pueden realizar al em-pleado, la Ley de Sustancias Controladas, infra, no per- *530 mite descartar una prueba que arrojó un resultado invá-lido; solo permite descartar aquella cuyo resultado de laboratorio determine que la muestra fue adulterada. Segundo, podíamos dictar sentencia sumaria en este caso en contra de la parte que la solicitó, pues nuestro ordena-miento lo permite. Tercero, si una mayoría de este Tribunal no estaba dispuesta a dictar sentencia sumaria, procedía denegar el recurso porque no se configura alguna de las tres excepciones que permiten obviar la norma general de que las resoluciones interlocutorias dictadas en un proce-dimiento laboral sumario no son revisables.
I
Los hechos que originaron el caso de epígrafe se expo-nen correctamente en la opinión mayoritaria, por lo que no los detallaremos nuevamente. Dicho esto, veamos el dere-cho aplicable que fundamenta nuestra posición.
La Ley Núm. 59-1997 (29 LPRA sec. 161 et seq.), Ley para Reglamentar las Pruebas para la Detección de Sus-tancias Controladas en el Sector Laboral Privado (Ley de Pruebas de Sustancias Controladas), autoriza a los patro-nos a implantar programas de detección de sustancias controladas siempre que cumplan con lo dispuesto en dicha ley. Según el estatuto, “[t]odo empleado podrá ser sometido a un máximo de dos pruebas al año, a menos que en una de estas pruebas se haya obtenido un resultado positivo debi-damente corroborado o como parte de un programa de con-sejería, tratamiento o rehabilitación”. (Énfasis suplido). 29 LPRA sec. 161b(h). Dichas pruebas
[...] se liarán mediante muestra de orina, salvo circunstancias en que no sea posible tomar la misma, y se administrará de acuerdo con los procedimientos analíticos y de cadena de custodia de muestra científicamente aceptables, de modo tal que se proteja al máximo la intimidad del empleado, y de con-formidad con el Mandatory Guidelines for Federal Workplace Drug Testing Program. [...] En caso de que se determine la *531 adulteración de una muestra, ésta será descartada y se solici-tará al empleado que provea una nueva, esta vez ante la pre-sencia de una persona de su mismo sexo, miembro del personal del laboratorio. (Énfasis suplido). 29 LPRA sec. 161b(d).
Las directrices para el programa federal de prueba de drogas en el lugar del trabajo, definen “muestra adultera-da” como sigue: “A specimen that has been altered, as evidenced by test results showing either a substance that is not a normal constituent for that type of specimen or showing an abnormal concentration of an endogenous substance”. (Énfasis suplido). 73 Fed. Reg. 71877. Asi-mismo, las directrices establecen que una “prueba cancela-da” es:
The result reported by the MRO to the Federal agency when a specimen has been reported to the MRO as invalid result (and the donor has no legitimate explanation) or rejected for testing, when a split specimen fails to reconfirm, or when the MRO determines that a fatal flaw or unrecovered correctable error exists in the forensic records. 73 Fed. Reg. 71878.
Por último, definen un “resultado inválido” como sigue:
The result reported by an HHS-certified laboratory in accordance with the criteria established in Section 3.8 when a positive, negative, adulterated, or substituted result cannot^ be established for a specific drug or specimen validity test. (Énfasis suplido). Id.
En virtud de lo anterior, la Ley de Pruebas de Sustan-cias Controladas y las directrices federales solo permiten que se descarte una prueba cuando el laboratorio determine que la muestra fue adulterada. Al repetir dicha prueba, la descartada no contará para efectos del límite de dos pruebas anuales que impone el estatuto. íd. En cam-bio, una prueba puede ser cancelada por varias razones no atribuibles al empleado. Esto, pues las directrices federa-les definen “resultado inválido” como uno en el que no se puede certificar un resultado positivo, negativo, adulterado o sustituido. Por ende, un resultado inválido no equivale a *532 nn resultado que refleje que la muestra fue adulterada. Consecuentemente, ambos resultados no pueden ser trata-dos de la misma forma. La Ley de Pruebas de Sustancias Controladas solo permite descartar un resultado cuando se determina que la prueba fue adulterada y no incluye los resultados inválidos en esta disposición. Siendo así, un re-sultado inválido debe ser contabilizado para efectos del lí-mite de dos pruebas anuales que impone el estatuto.
No obstante, la opinión mayoritaria pauta que “cuando una muestra arroja un resultado inválido y el donante no puede ofrecer una explicación sobre las razones para su invalidez, procede cancelar la prueba, lo que equivale a descartarla”. Opinión mayoritaria, pág. 524. No podemos estar de acuerdo con esta interpretación por ser contraria a lo expuesto anteriormente. Además, ¿cómo podemos exigir al donante que nos explique por qué una muestra arrojó un resultado inválido cuando el mismo laboratorio no pudo determinar de esa muestra un resultado positivo, negativo, adulterado o sustituido? Precisamente, por el hecho de que “de un resultado inválido no se puede concluir nada” es que no procede descartarlo en perjuicio del derecho estatutario del donante a no ser sometido a más de dos pruebas de dopaje al año.
En el caso ante nos, Holsum de Puerto Rico, Inc. (Hol-sum) pretende que no se compute el resultado inválido, al igual que se haría con uno adulterado. No obstante, la Ley de Pruebas de Sustancias Controladas, interpretada con-forme a las guías federales, no permite descartar un resul-tado inválido al momento de computar las pruebas realiza-das al empleado durante un año determinado. Los resultados del laboratorio no determinaron que la prueba realizada al Sr. Orlando Ortiz hubiera sido adulterada. En cambio, el Dr. Wilfredo Avilés indicó que el resultado era inválido. Por lo tanto, esta primera prueba realizada al señor Ortiz debe ser contabilizada al momento de compu-tar las dos pruebas anuales de dopaje permitidas por ley.
*533 Consecuentemente, la tercera prueba de dopaje realizada al señor Ortiz mediante una muestra de cabello se realizó en exceso del límite de dos pruebas anuales de do-paje permitido por la Ley de Pruebas de Sustancias Controladas. Ya que Holsum estaba impedido de realizar dicha prueba y que esta fue la única que arrojó un resultado positivo al uso de sustancias controladas, no procede determinar mediante una sentencia sumaria que Holsum tenía justa causa para despedir al señor Ortiz. Véase Art. 2 de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA see. 185b. Al contrario, lo que procedía en este caso era dictar una sentencia sumaria a favor del señor Ortiz. Tal y como reconoce la opinión mayoritaria, “nuestro ordenamiento jurídico permite que se dicte sentencia sumaria en contra de la parte que la solicita, siempre que no existan hechos materiales que estén en controversia”. Opinión mayoritaria, pág. 526, citando a P.A.C. v. E.L.A. I, 150 DPR 359, 374 (2000), y a Col. Ing. Agrim. P.R. v. A.A.A., 131 DPR 735, 782 (1992). Si una mayoría de este Tribunal no estaba dispuesta a dictar sen-tencia sumaria a favor del señor Ortiz, entonces procedía denegar el recurso.
Hemos resuelto que el procedimiento laboral sumario establecido en la Ley Núm. 2 de 17 de octubre de 1961 (32 LPRA see. 3118 et seq.), al amparo del cual se originó el pleito de epígrafe, impide que las resoluciones interlocutorias sean revisables porque lo contrario desvirtuaría el carácter sumario que debe caracterizar dicho procedimiento. Dávila, Rivera v. Antilles Shipping, Inc., 147 DPR 483, 498 (1999). Al respecto, señalamos que “la sobrecarga de casos pendientes ante los tribunales apelativos impedían la rápida solución de estos recursos [...] En consecuencia, concluimos que la parte que pretendiera impugnar tales resoluciones debía esperar hasta la sentencia final e instar el recurso pertinente a base del alegado error cometido”. Aguayo Pomales v. R & G Mortg., 169 DPR 36, 45 (2006).
*534 Solo existen tres excepciones a esta norma general de autolimitación: (1) cuando la resolución interlocutoria fue dictada por el Tribunal de Primera Instancia sin jurisdic-ción para ello, (2) cuando se trate de un caso extremo en que la revisión inmediata del foro apelativo dispone del caso en forma definitiva o aporta a su pronta disposición y (3) cuando la revisión inmediata evite una grave injusticia. Aguayo Pomales v. R & G Mortg., supra, pág. 45. Véase, también, Dávila, Rivera v. Antilles Shipping, Inc., supra.
Aunque la opinión mayoritaria invoca la segunda excep-ción, no dispone del caso por completo, pues se niega a dictar sentencia sumaria; tampoco aportó a la pronta dis-posición del recurso, sino que la interrumpió. El Tribunal de Primera Instancia pudo haber resuelto la controversia de autos ya resolviendo que la primera prueba impedía a Holsum realizar la tercera o determinando que, a pesar de que procedía descartar la primera prueba, las guías fede-rales impedían realizar la tercera mediante una muestra de cabello. Por ende, la excepción invocada no se configuró y este recurso debió denegarse.
II
Por todo lo anterior, disentimos. En cambio, hubiéramos dictado sentencia sumaria a favor del señor Ortiz o, en la alternativa, hubiéramos denegado el recurso.